**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 09-cv-02552-CMA-CBS

BANK OF COLORADO, a Colorado corporation,

      Plaintiff/Counter-Defendant,

v.

JAMES E. BERWICK, an individual,

      Defendant/Cross-Defendant,

LAS VEGAS SANDS, LLC, a Nevada limited liability company,

      Defendant/Cross-Claimant.

      and

JAMES E. BERWICK,

      Defendant/Third-Party Plaintiff

v.

RON BRYANT, an individual, and
JAMES KALHORN, an individual,

      Third-Party Defendants.

---

**ORDER GRANTING DEFENDANT LAS VEGAS SANDS, LLC'S MOTION FOR
SUMMARY JUDGMENT; DENYING PLAINTIFF BANK OF COLORADO'S MOTION
FOR SUMMARY JUDGMENT; AND DENYING DEFENDANT JAMES BERWICK'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

This matter is before the Court on Motions for Summary Judgment filed by Defendant Las Vegas Sands, LLC (Doc. # 68) and Plaintiff Bank of Colorado (Doc. # 88), and Defendant James E. Berwick's Motion for Partial Summary Judgment (Doc. # 57).  For the following reasons, summary judgment is granted in favor of Defendant Las Vegas Sands and granted against Plaintiff Bank of Colorado and Defendant Berwick.

## I. PROCEDURAL HISTORY

This action arises from a dispute surrounding Plaintiff Bank of Colorado's issuance of, and ultimate stop payment on, a $250,000 cashier's check, upon the request of its customer, Defendant James E. Berwick.  On October 30, 2009, Bank of Colorado filed a Complaint in interpleader against Defendants Berwick and Las Vegas Sands, LLC.  (Doc. # 1.)  On January 6, 2010, Las Vegas Sands filed an Answer, a Counterclaim against Bank of Colorado for wrongful dishonor of the cashier's check, and a Cross-Claim against Defendant Berwick for tortious interference with Las Vegas Sands' rights to the amount of the cashier's check.  (Doc. # 12.)  On January 7, 2010, Defendant Berwick filed an answer to the Complaint (Doc. # 13), and on April 1, 2010, Berwick amended his answer to assert a counterclaim against Bank of Colorado for an alleged failure to comply with Colo. Rev. Stat. § 4-3-312(4) by refusing to recognize Berwick as a proper claimant to the check at the expiration of 90 days after Berwick's submission of the Declaration of Loss (Doc. # 31).  On April 7, 2010, Berwick further amended his Answer and Counterclaim (Doc. # 42) and filed a Third-Party Complaint against Ron Bryant and James Kalhorn, alleging that Bryant and Kalhorn engaged in

2

a conspiracy to defraud him (Doc. # 43).  On April 13, 2010, Bank of Colorado filed an Amended Complaint in Interpleader to add claims of breach of warranty, misrepre-sentation, and concealment/non-disclosure against Berwick  (Doc. # 46).

On July 7, 2010, Defendant Berwick filed a Motion for Partial Summary Judgment against Bank of Colorado and Defendant Las Vegas Sands.  (Doc. # 57.)  Defendant Las Vegas Sands and Plaintiff Bank of Colorado filed responses on August 9 and 11, 2010, respectively (Doc. ## 62, 69), and Berwick replied on September 22, 2010 (Doc. # 76).

On August 11, 2010, Las Vegas Sands filed a combined Motion for Summary Judgment against Defendant Berwick and a Motion for Partial Summary Judgment against Plaintiff Bank of Colorado.  (Doc. # 68.)  Berwick and Bank of Colorado responded on September 22, 2010 (Doc. ## 74 and 77, respectively), Las Vegas Sands replied on October 4, 2010 (Doc. # 78), and, with leave of Court, Plaintiff Bank of Colorado filed a Surreply on November 1, 2010 (Doc. # 83).  Las Vegas Sands filed a Rebutter on November 1, 2010 (Doc. # 84), and a Supplement to the Rebutter on November 23, 2010 (Doc. # 87).

On December 6, 2010, Plaintiff Bank of Colorado filed a Motion for Summary Judgment, seeking an order discharging it of liability pursuant to 28 U.S.C. § 2361. (Doc. # 88.)  Defendants Berwick and Las Vegas Sands responded on December 22 and 23, 2010, respectively (Doc. ## 89 and 90), and Bank of Colorado replied on January 10, 2011 (Doc. # 91).

## II.  <u>FACTUAL BACKGROUND</u>[1]

On October 29, 2008, Defendant Berwick purchased a cashier's check ("Check"), number 44003093, in the amount of $250,000 from Plaintiff Bank of Colorado; the Check was made payable to Third Party Defendant Ron Bryant.  Berwick directed the Bank of Colorado to deliver the Check to Third Party Defendant James Kalhorn, who was to deliver the Check to Bryant.  The next day, on October 30, 2008, Bryant presented the Check to Defendant Las Vegas Sands.  That same day, before accepting the Check, Las Vegas Sands verified, via a phone call to Bank of Colorado, that Bank of Colorado issued the Check and that the Check was not subject to any stops or holds.  Accordingly, on November 6, 2008, Las Vegas Sands deposited the Check into its bank account and, on November 10, 2008, the Check was presented for payment to Bank of Colorado and entered as a debit on Bank of Colorado's ledger. However, on November 3, 2008, a week before the Check was presented to Bank of Colorado for payment, Berwick executed and provided to Bank of Colorado a verified "Claim to Lost, Stolen, or Destroyed Cashier's Check or Money Order" ("Declaration of Loss"), claiming the Check's whereabouts could not be determined, (Doc. # 88-1 at 5), and a Stop Payment Request, requesting Bank of Colorado to stop payment on the Check.[2]  In support of the stop payment request, Berwick stated that the Check was

---

[1]   Unless otherwise noted, the following facts are undisputed and are taken from the parties' pleadings, briefs, and attached exhibits.

[2]   The Declaration of Loss included the following pre-printed statement, after which appears to be Mr. Berwick's signature: "I further understand that my claim may be unenforce-able if the Declaration of Loss fails to meet the requirements of Section 3-312 of the Uniform Commercial Code or if it fails to reach the bank at a time and in a manner that affords the bank

"lost after being given to [Third Party Defendant] James Kalhorn on 31 October." (Doc. # 88-1 at 4.) Accordingly, Bank of Colorado returned the check to Las Vegas Sands on November 12, 2008, with a notation, "Refer to Maker."

On November 28, 2008, Las Vegas Sands contacted Bank of Colorado, in a further attempt to collect on the Check, at which time, Las Vegas Sands was advised that the payment was stopped by Berwick, due to fraud.

Sometime after Las Vegas Sands presented the Check, Defendant Berwick and his attorney contacted William G. Coates, a Senior Vice President at Bank of Colorado, to discuss the Check. Berwick informed Coates that Bryant had defrauded him and that he was hiring a private investigator to build a criminal case against Bryant. Accordingly, Bank of Colorado stated that it would hold the funds until a court determined to whom the funds should be paid.

On November 25, 2008, Berwick delivered to Bank of Colorado copies of a Voluntary Statement by a Josh B. Mallard, which statement Mallard filed with the Las Vegas Metropolitan Police Department, and a related Incident Report, both dated November 13, 2008. According to Mr. Mallard, on October 31, 2008, he and Berwick gave Ron Bryant checks in the amount of $100,000 and $250,000, respectively, for Mr. Bryant's use as proof of funds to obtain promotional premiums from The Venetian

---

reasonable time to act on it before the check is paid." (Doc. # 88-1 at 5.) The Declaration of Loss also contains the following indemnification, "I understand that if this claim is paid and the check is later presented for payment by a person having the rights of a holder in due course, I am obliged to either refund the payment to the bank if the check is paid or pay the amount of the check to the person having rights of a holder in due course if the check is dishonored." (*Id.* at 6.)

5

Resort Hotel Casino, a Las Vegas Sands casino.  However, despite Mr. Bryant's

agreement not to cash the checks and to return them twenty-four hours later, Mr. Bryant

cashed the checks and spent the funds.  Mr. Bryant also failed to reimburse Berwick

and Mr. Mallard for the spent funds by an agreed-upon date certain.  (Doc. # 88-2 at 8.)

On November 24, 2008, Berwick sent a letter to the Las Vegas Metro Police

Department, in which he stated that Mr. Bryant misappropriated the $250,000 Check

and pursuant to which he sought to have his complaint against Mr. Bryant included in

Mr. Mallard's November 13, 2008 police report.  (Doc. # 88-2.)

## III.  <u>STANDARD OF REVIEW</u>

The purpose of a summary judgment motion is to assess whether trial is

necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Fed. R. Civ. P.

56(c) provides that summary judgment shall be granted if "the pleadings, the discovery

and disclosure of materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter

of law."  A fact is "material" if it pertains to an element of a claim or defense; a factual

dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a

reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248 (1986). However, the nonmoving party "must do more

than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"The mere existence of a scintilla of evidence in support of the [nonmoving party's]

position will be insufficient; there must be evidence on which the jury could reasonably

6

find for the [nonmoving party]." *Anderson*, 477 U.S. at 252.  When considering cross-motions for summary judgment, the court must view the evidence in a light most favorable to the party opposing the motion under consideration.  *See, e.g.*, *Besso v. Cummins Intermountain, Inc.*, 885 F. Supp. 1516, 1520 (D. Wyo. 1995); 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE, § 56.10[6] at 56-85, 86 (3d ed. 2010) ("In practice [ ] a cross-motion for summary judgment operates exactly like a single summary judgment motion.")  Any factual ambiguities must be resolved in favor of the nonmovant, thus favoring the right to trial.  *Houston v. Nat'l Gen. Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). The "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] by simply pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671.  After the movant has met its initial burden, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in its favor.  *See Anderson*, 277 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his

pleadings and provide admissible evidence,[3] which, as mentioned, the Court views in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324).  However, conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## IV.  ANALYSIS

In its Motion for Summary Judgment, Bank of Colorado asserts that it acted properly by interpleading the funds with this Court and, therefore, summary judgment should be granted in its favor and it should be discharged of all liability.  In their separate Motions for Summary Judgment, Defendants Berwick and Las Vegas Sands assert that each is entitled to the amount of the Check over the other's claim and, therefore, Bank of Colorado is not free from blame in causing the controversy by withholding payment.  Additionally, Berwick asserts that Bank of Colorado wrongfully initiated this interpleader action.[4]  Las Vegas Sands further asserts that Berwick has no right to the interpleaded funds because the Check was not a "lost check" as defined

---

[3]  While the parties need not present evidence "in a form that would be admissible at trial, [ ] the content or substance of the evidence must be admissible."  *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 485 (10th Cir. 1995).

[4]  Despite Las Vegas Sands' asserted rights to the amount of the Check, Las Vegas Sands confusingly asserts that "the interpleader action was at least proper as respects [sic] Berwick even though the failure to honor the Cashier's Check was wrongful as against LVS." (Doc. # 68 at 11.)  In any event, a person or entity's holder-in-due-course status is a legal conclusion.  *See*, *e.g.*, *Fundacion Museo de Arte Contemporaneo de Caracas - Sofia Imber v. CBI-TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir. 1998).

under the statute and, therefore, Berwick improperly submitted a stop payment request to Bank of Colorado, and Bank of Colorado improperly honored the stop payment request.  Additionally, Las Vegas Sands asserts that it is entitled to the interpleaded funds as a holder in due course because, in pertinent part, the Check did not bear apparent evidence of forgery, alteration, irregularity, or incompleteness, which would call into question the Check's authenticity; Las Vegas Sands took the Check for value, in good faith, and without any notice that the Check was lost or subject to a stop payment; and the Check was presented to Las Vegas Sands by Bryant, the payee of the Check.  (Doc. # 68 at 14-15.)  Berwick disputes that Las Vegas Sands is a holder in due course; alternatively, Berwick contends that Las Vegas Sands lost any right to enforce the check because Berwick had filed a claim against the Check, which claim had become enforceable.  Berwick further contends that Las Vegas Sands' "holder in due course" status is a matter to be determined at trial.  (Doc. # 74 at 3.)  However, Berwick fails to present any evidence that controverts Las Vegas Sands' claimed "holder in due course" status.[5]  As discussed later in this Order, the Court finds that Las Vegas Sands was a holder in due course.  First, the Court will discuss the propriety of this interpleader action.

---

[5]  Bank of Colorado does not appear to take an affirmative position regarding whether Las Vegas Sands was a holder in due course. *See* Doc. # 77 at 10 ("While LVS might have been a holder in due course, under the circumstances the Bank was not obligated to pay the funds.").

A.   **WHETHER BANK OF COLORADO'S INTERPLEADER OF FUNDS WAS PROPER**

1.   Choice of Law

At the outset, the Court notes that the parties dispute whether Colorado's or Nevada's version of Article 3 of the Uniform Commercial Code applies and, in most cases, the parties cite to both states' laws in their briefs.  However, both Colorado and Nevada have adopted the Uniform Commercial Code and, therefore, the relevant law in both states is substantially the same.  *See* COLO. REV. STAT. § 4-1-101, *et seq.*; NEV. REV. STAT. § 104.1101, *et seq.*  "When more than one body of law may be applicable to a claim or issue, a court need not choose which body of law to apply unless there is an outcome determinative conflict between the potentially applicable bodies of law. If there is no outcome determinative conflict in the potentially applicable bodies of law, the law of the forum is applicable."  *Iskowitz v. Cessna Aircraft Co.*, No. 07-cv-00968, 2010 WL 3075476, at *1 (D. Colo. Aug. 5, 2010) (unpublished) (internal citations omitted); *see also United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F. Supp. 861, 866 (D. Colo. 1996).  Because no outcome determinative conflict of law exists, the Court will apply Colorado law, the law of the forum.

2.   The Propriety of an Interpleader Action

"An interpleader action allows the stakeholder to bring the several claimants into a single action and to require them to litigate among themselves to determine which has the valid claim."  *Amoco Prod. Co. v. Aspen Group*, 59 F. Supp. 2d 1112, 1114 (D. Colo. 1999).  "The typical interpleader action proceeds in two distinct stages.  During

the first stage, the court determines whether the interpleader complaint was properly

brought and whether to discharge the stakeholder from further liability to the claimants.

During the second stage, the court determines the respective rights of the claimants to

the fund." *Cagle v. James Street Group*, No. CIV-07-0029, 2009 WL 2230928, at *3

(W.D. Okla. July 23, 2009) (unpublished) (citations omitted).  "The burden is upon the

stakeholder to justify an interpleader proceeding by establishing that he is or may be

exposed to double or multiple liability because of adverse claims to the res that he

holds." *Williston Basin Interstate Pipeline Co. v. W. Gas Processors, Ltd.*, No. 88-A-

612, 1988 WL 73310, at *2 (D. Colo. July 8, 1988) (unpublished) (citations omitted).

Interpleader is proper "[s]o long as the stakeholder is confronted with multiple adverse

claims or liability . . . even if the stakeholder does not believe that all the claims against

the stake are meritorious."  4 JAMES WM. MOORE ET AL., Moore's Federal Practice §

22.03[1][a] at 22-18 (3d ed. 2010).

Bank of Colorado initiated this interpleader action in this Court pursuant to 28

U.S.C. § 1335, which gives district courts original jurisdiction over interpleader actions

where two or more adverse claimants assert an interest in money or property valued at

$500 or more.  Bank of Colorado asserts that an interpleader action in connection with

the Check is appropriate pursuant to Colo. Rev. Stat. § 4-3-312 because both Berwick

and Las Vegas Sands asserted a right to the Check.  Within one week of Berwick's filing

a Declaration of Loss stating that the Check's whereabouts was unknown, Las Vegas

Sands' bank presented the Check to Bank of Colorado for payment.  Therefore, Bank of

Colorado was presented with two competing claims to the amount of the Check and,

11

regardless of whether Bank of Colorado found merit in both claims, it rightfully brought this interpleader action and deposited the funds into the Court's registry.[6]  Accordingly, at this first stage, the Court finds that the interpleader complaint was properly filed because Bank of Colorado was faced with conflicting claims of entitlement to the proceeds of the Check.  The Court will next discuss whether Bank of Colorado may be discharged from liability.

      3.   <u>Discharging the Stakeholder from Liability</u>

"[A] party seeking interpleader must be free from blame in causing the controversy, and where he stands as a wrongdoer with respect to the subject matter of the suit or any of the claimants, he cannot have relief by interpleader." *Farmers Irrigating Ditch & Reservoir Co. v. Kane*, 845 F.2d 229, 232 (10th Cir. 1988).  When hearing and determining an interpleader action, the district court may discharge the stakeholder plaintiff from further liability to the claimants.  28 U.S.C. § 2361.  However, before discharging a stakeholder plaintiff under § 2361, the court must first determine whether the requirements of § 1335 have been met. *Mendez v. Teachers Ins. &*

---

[6]   Defendant Las Vegas Sands points to comment 3 of Colo. Rev. Stat. § 4-3-312 in support of its contention that Bank of Colorado improperly brought an interpleader action.  (Doc. # 90 at 10-11.)  However, comment 3 does not render the instant interpleader action improper. Comment 3 of section 4-3-312 contemplates an obligated bank's use of the interpleader procedure in the "highly unlikely" event that more than one person asserts a claim to the amount of a check by filing a declaration of loss.  Specifically, pursuant to comment 3, "[t]he obligated bank is not required to determine whether a claimant who complies with [the procedures for asserting a claim and filing a declaration of loss] is acting wrongfully.  The bank may utilize procedures . . . such as interpleader, under which conflicting claims may be adjudicated." Neither the language of this comment nor the language of the statute precludes banks from filing interpleader actions in other situations where competing interests in a fund are asserted. Thus, the mere fact that a single declaration of loss was filed in connection with the Check does not render improper the instant interpleader action.

*Annuity Ass'n and Coll. Ret. Equities Fund*, 982 F.2d 783, 787 (2d Cir. 1992) (quoted in

*AIG Annuity Ins. Co. v. Law Offices of Theodore Coates, P.C.*, No. 07-cv-01908, 2008

WL 4079982, at *9 (D. Colo. Sept. 2, 2008) (unpublished)); *see also Am. Home Life Ins.*

*Co. v. Barber*, No. 02-4168, 2003 WL 21289986, at *2 (D. Kan. May 16, 2003)

(unpublished) (noting that discharge is appropriate where the stakeholder "can

contribute nothing toward resolution of the issues between the other parties, its

interpleader action is properly filed, and no genuine issue exists as to its rights and

liabilities").

In the instant case, as discussed in more detail below, the Court finds that Bank

of Colorado cannot be discharged from further liability to Las Vegas Sands because

Bank of Colorado erred in honoring Berwick's stop payment request.

4.    The Impropriety of Bank of Colorado's Honoring Berwick's Stop Payment
      Request

      a.    The Cash Equivalence of Checks

Although the Court finds that Bank of Colorado properly commenced this

interpleader action, the Court finds that the Bank improperly honored Berwick's stop

payment request and, therefore, the Bank cannot be discharged from further liability

at this juncture.

Colorado courts treat cashier's checks as cash equivalents.  *See Flatiron Linen,*

*Inc. v. First Am. State Bank*, 23 P.3d 1209, 1212 (Colo. 2001) (noting the commercial

world's acceptance of cashier's checks as a cash equivalent because the bank, not an

individual, stands behind it); *see also* COLO. REV. STAT. § 4-3-312, comment 3 (noting

policy interest in fostering continued utility of cashier's checks as cash equivalents).
As stated by the Tenth Circuit, "a cashier's check is an indebtedness of a bank which
is accepted - as that term is applied by the Uniform Commercial Code [    ] **upon its
issuance**.[7]  Accordingly, the issuing bank's liability on the instrument is governed by the
[Uniform Commercial Code]."  *Hotel Riviera, Inc. v. First Nat'l Bank and Trust Co. of
Oklahoma City, Okla.*, 768 F.2d 1201, 1203 (10th Cir. 1985) (emphasis added) (citing
to *Anderson, Clayton & Co. v. Farmers Nat'l Bank of Cordell*, 624 F.2d 105 (10th Cir.
1980); *Pennsylvania v. Curtiss Nat'l Bank of Miami Springs, Fla.*, 427 F.2d 395 (5th Cir.
1970)).  "Because the bank serves as both the drawer and drawee of the cashier's
check, the check becomes a promise by the bank to draw the amount of the check
from its own resources and to pay the check upon demand."  23 P.3d at 1212 (citing
*Kaufman v. Chase Manhattan Bank, Nat'l Ass'n*, 370 F. Supp. 276, 278 (S.D.N.Y.
1973)).

Although banks may honor a stop payment request as an accommodation to
their customers, "[s]ection 3-411 is designed to discourage this practice" by requiring
the bank to compensate for expenses, loss of interest, and any consequential damages
resulting from non-payment.  COLO. REV. STAT. § 4-3-411, comment 1; *see also* Sheldon
R. Shapiro, Annotation, *Uniform Commercial Code: Bank's Right to Stop Payment on Its
Own Uncertified Check or Money Order*, 97 A.L.R.3d 714 (2010) (stating, "courts have

---

[7]  A recognized exception to this rule is where a payee of a cashier's check, who, in
dealing directly with the payor bank, engaged in fraud to obtain issuance of the cashier's check.
*Anderson, Clayton & Co. v. Farmers Nat'l Bank of Cordell*, 624 F.2d 105, 110 (10th Cir. 1980)
(acknowledging other courts' recognition of this exception).

14

often concluded that where a bank issuing its own check or money order is both the drawer and drawee, such issuance constitutes an 'acceptance,' after which there is 'no right to stop payment.'").  Allowing banks to stop payment on cashier's checks would "undermine the public confidence in the bank and its checks and thereby deprive the cashier's check of the essential incident [*i.e.*, its cash equivalence] which makes it useful."  *Flatiron Linen, Inc.*, 23 P.3d at 1213 (citation omitted).  Thus, the "cashier's check[ ] represent[s] the **unconditional obligation** of the issuing bank to pay, and therefore, banks may not dishonor their cashier's checks once issued," except where the bank was fraudulently induced to issue the cashier's check.  *Id.* (emphasis added); *see also Hotel Riviera, Inc. v. First Nat'l Bank and Trust Co. of Oklahoma City, Okla.*, 768 F.2d 1201, 1203-04 (10th Cir. 1985) (directing lower court to enter judgment in favor of casino and against drawer bank, in light of the fact that a bank accepts its obligation to pay a cashier's check upon the check's issuance).

Additionally, "a bank may only assert its real and personal defenses in order to refuse payment on a cashier's check issued by the bank.  It may not, however, rely on a third party's defenses to refuse payment," as Bank of Colorado attempts to do.  *Warren Fin., Inc. v. Barnett Bank of Jacksonville, N.A.*, 552 So.2d 194, 201 (Fla. 1989); *see also* COLO. REV. STAT. § 4-3-305(a)(1) ("the right to enforce the obligation of a party to pay an instrument is subject to . . . fraud that induced the obligor to sign the instrument"); § 4-3-305(c) ("the obligor may not assert against the person entitled to enforce the instrument a defense . . . of another person); *Anderson, Clayton & Co. v. Farmers Nat'l Bank of Cordell*, 624 F.2d 105, 110 (10th Cir. 1980) (noting that a bank may assert the defense

15

of fraud where it was fraudulently induced into issuing a cashier's check); *MidAmerica Bank, FSB v. Charter One Bank, FSB*, 905 N.E.2d 839, 846, 848 (Ill. 2009) (finding that bank, which had no knowledge of fraud, wrongfully dishonored cashier's check at the bank customer's stop payment request); *Patriot Bank, N.A. v. Navy Fed. Credit Union*, No. 199772, 2002 WL 481129, at *4-*5 (Va. Cir. Ct. Feb. 26, 2002) (unpublished) (finding that the credit union was liable for the amount of the cashier's check plus expenses where the remitter, not the bank, was defrauded); *cf. Khan v. Alliance Bank*, No. CL-2009-14692, 2009 WL 7416549, at *2 (Va. Cir. Ct. Dec. 22, 2009) (unpublished) (finding claims against bank for failure to pay cashier's check failed where cashier's check was obtained by fraud on the bank).

In the instant case, no evidence was presented that Bank of Colorado was fraudulently induced into issuing the Check; to the extent that Berwick, the Bank's customer, asserts he was defrauded, the Bank may not assert fraud on its customer as a defense to its unconditional obligation to pay.  Further, as discussed below, Berwick's asserted claim against the Check was (1) defective, because it was false and (2) not enforceable at the time Las Vegas Sands presented the Check for payment to Bank of Colorado.  Additionally, as discussed below, because Las Vegas Sands was a holder in due course, Bank of Colorado's dishonor of the Check wrongfully denied Las Vegas Sands payment.

        b.     *James Berwick's Stop Payment Request and Claim to the At-Issue Funds*

Defendant Berwick asserts that he is entitled to the amount of the Check, pursuant to COLO. REV. STAT. § 4-3-312, because of his filing of a declaration of loss. As set forth in § 4-3-312(b),:

> A claimant may assert a claim [hereinafter, a "Declaration of Loss Claim"] to the amount of a check by a communication to the obligated bank describing the check with reasonable certainty and requesting payment of the amount of the check, if (i) the claimant is . . . the remitter or payee of a cashier's check . . . , (ii) the communication contains or is accompanied by a declaration of loss of the claimant with respect to the check, (iii) the communication is received at a time and in a manner affording the bank a reasonable time to act on it before the check is paid, and (iv) the claimant provides reasonable identification if requested by the obligated bank. Delivery of a [Declaration of Loss Claim] is a warranty of the truth of the statements made in the declaration. The warranty is made to the obligated bank [*i.e.*, Bank of Colorado] and any person entitled to enforce the check [*i.e.*, Las Vegas Sands].

Such a Declaration of Loss Claim becomes enforceable only if it was asserted in compliance with subsection (b), and only at the later of (i) the time the claim is asserted or (ii) the 90th day following the date of the cashier's check. COLO. REV. STAT. § 4-3-312(b)(1). Until the Declaration of Loss Claim becomes enforceable, the obligated bank may pay the check. *Id.* at § 4-3-312(b)(2). Additionally, "[a] person not in possession of an instrument is entitled to enforce the instrument if (i) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (ii) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful

possession of an unknown person or a person that cannot be found or is not amenable to service of process." *Id.* at § 4-3-309(a).[8]

In the instant case, Defendant Berwick submitted a Declaration of Loss Claim less than one week after he purchased the Check (made payable to Third-Party Defendant Ron Bryant) and had Bank of Colorado deliver the Check to Third-Party Defendant James Kalhorn, for Kalhorn's ultimate delivery of the Check to Bryant.  Bank of Colorado received this Declaration of Loss Claim approximately one week before Las Vegas Sands' bank presented the check to Bank of Colorado for payment on November 10, 2008, but after Las Vegas Sands confirmed with Bank of Colorado that the Check was free of any stops or holds.  Two days after Las Vegas Sands' bank presented the Check, Bank of Colorado returned the Check to Las Vegas Sands. On November 25, 2008, within two weeks of returning the Check to Las Vegas Sands, Bank of Colorado learned that, contrary to Berwick's Declaration of Loss, the Check was not lost; rather, Berwick advised Bank of Colorado that Bryant, the payee of the Check, had defrauded him.  Three days later, on November 28, despite learning that the Check was not lost, Bank of Colorado rejected Las Vegas Sands' additional attempts to collect on the Check.

The Court finds that Berwick's Declaration of Loss did not comply with sections 309(a) or 312(b)(2) because the Check was not actually lost.  Rather, the Check had been redeemed by Bryant, the payee, at The Venetian Resort Hotel Casino.  Berwick

---

[8]   Pursuant to section 4-3-312(d), "If a claimant has the right to assert a claim under [section 4-3-312(b)] and is also a person entitled to enforce a cashier's check . . . the claimant may assert rights with respect to the check either under [section 4-3-312] or section 4-3-309."

was not entitled to enforce payment on the Check pursuant to section 4-3-309(a) because his loss of possession of the Check occurred because he, himself, arranged for ultimate delivery of the Check to Bryant.  As such, the Check was not in the wrongful possession of an unknown person.  Additionally, not only was Berwick's Declaration of Loss Claim not enforceable at the time Las Vegas Sands' bank presented the Check for payment, but also, Bank of Colorado learned the Check was not lost well before Berwick's claim could have become enforceable.

Based on the foregoing, the Court finds that Berwick does not have an enforceable claim to the amount of the Check.  In addition, Berwick's assertion that he was defrauded does not justify Bank of Colorado's refusal to honor the Check when presented for payment by Las Vegas Sands.

**B.     LAS VEGAS SANDS AS THE RIGHTFUL OWNER OF THE AT-ISSUE FUNDS**

1.     Holder In Due Course

Pursuant to COLO. REV. STAT. § 4-3-302, "holder in due course" means "a holder of an instrument" that "does not bear such apparent evidence of forgery or altercation or is not otherwise so irregular or incomplete as to call into question its authenticity"; and the holder took the instrument for value, in good faith, and without notice that the instrument is subject to claims or defenses to payment, among other kinds of notices. "A person having rights of a holder in due course takes free of the claim to the instrument."  COLO. REV. STAT. § 4-3-306.

In the instant case, there is no dispute that Las Vegas Sands took the Check, which was presented by Bryant, the payee of the Check, for value, in good faith, and

19

without notice that the Check was subject to claims or defenses to payment.  Further,

prior to accepting the Check, Las Vegas Sands performed due diligence by contacting

Bank of Colorado to confirm that the Check was not subject to any stops or holds.

Accordingly, the Court finds that Las Vegas Sands was a holder in due course and,

therefore, takes the Check free of Berwick's Declaration of Loss.

      2.    <u>Whether Payment on Presentment Was Discretionary</u>

      Bank of Colorado argues that it had no obligation to pay Las Vegas Sands

the amount of the Check, in light of Berwick's filing of a Declaration of Loss Claim.

(*See* Doc. # 88 at 14.)  In so arguing, Bank of Colorado relies on the following passage

in COLO. REV. STAT. § 4-3-312, cmt. 3 for the proposition that payment to Las Vegas

Sands was discretionary:

> . . . if a lost check is presented for payment within the 90-day period, the
> bank may pay a person entitled to enforce the check without regard to the
> claim and is discharged of all liability with respect to the check.

Although Bank of Colorado is correct that payment upon Las Vegas Sands'

presentment of the Check was discretionary, within approximately three weeks of

declaring the Check was lost and while Las Vegas Sands continued to seek payment on

the Check, Berwick admitted to the Bank that the Check was not lost, but was

improperly cashed by the payee.  Accordingly, the Court finds Comment 3 inapplicable

to the case at hand.

      Additionally, the Court finds that Las Vegas Sands is entitled to the amount of the

Check because it received the Check in good faith and for value, without knowledge of

Bryant's alleged fraudulent scheme against Berwick, and took steps to affirmatively

confirm that no stops or holds were placed on the Check.  Because the Check was

accepted on issuance, the Bank cannot be allowed to escape the effect of its

acceptance on the grounds that Las Vegas Sands received the Check from the payee

(Bryant) who allegedly defrauded the Bank's customer (Berwick).  *See Hotel Riviera,*

*Inc. v. First Nat'l Bank and Trust Co. of Oklahoma City, Okla.*, 768 F.2d 1201, 1203

(10th Cir. 1985).  Finally, "an important policy objective of the [Uniform Commercial

Code] is to protect the party least able to protect himself or herself.  Where one of two

innocent parties must suffer because of the wrongdoing of a third person, the loss must

fall on the party who has by his conduct created the circumstances which enabled the

third party to perpetuate the wrong."  *Georg v. Metro Fixtures Contractors, Inc.*, 178

P.3d 1209, 1216 (Colo. 2008) (internal quotations and citations omitted) (finding that the

defrauded plaintiff's recourse was not against the good faith recipient of a cashier's

check but against the plaintiff's own employee who defrauded it).  In the instant case,

the undisputed facts reveal that Berwick created the circumstances which enabled

Bryant to misappropriate Berwick's funds; Berwick gave Bryant a check in the amount of

$250,000 solely on Bryant's promise the funds would not be spent.  Therefore, the loss

must fall on Berwick; his recourse is not against Bank of Colorado, but against Bryant,

who defrauded him.

Accordingly, summary judgment in Las Vegas Sands' favor and against Bank of

Colorado is warranted in connection with Las Vegas Sands' counterclaim against Bank

of Colorado for the wrongful dishonor of the Check.  Having found that Las Vegas

Sands is the rightful owner of the amount of the Check, the Court also finds that Las

Vegas Sands may recover expenses and consequential damages arising from Bank of Colorado's wrongful dishonor of the Check.  *See* COLO. REV. STAT. § 4-3-411(b).[9]

## V.  **CONCLUSION**

Accordingly, IT IS ORDERED THAT:

(1)    Defendant Berwick's Motion for Partial Summary Judgment (Doc. # 57) is DENIED;

(2)    The Motion for Summary Judgment of Defendant Las Vegas Sands Against Defendant James E. Berwick and Motion for Partial Summary Judgment Against Plaintiff Bank of Colorado (Doc. # 68) is GRANTED;

(3)    Plaintiff Bank of Colorado's Motion for Summary Judgment (Doc. # 88) is DENIED on grounds that it cannot be released from liability at this juncture;

(4)    Defendant Berwick's counterclaim against Plaintiff Bank of Colorado for an alleged failure to comply with COLO. REV. STAT. § 4-3-312(4) by refusing to recognize Berwick as a proper claimant to the check is DISMISSED WITH PREJUDICE;

(5)    The Clerk of Court shall enter judgment, in accordance herewith, awarding the interpleaded funds in the registry of the Court in the amount of

--------

[9]   "If the obligated bank wrongfully (i) refuses to pay a cashier's check or certified check, (ii) stops payment on a teller's check, or (iii) refuses to pay a dishonored teller's check, the person asserting the right to enforce the check is entitled to compensation for expenses and loss of interest resulting from the nonpayment and may recover consequential damages if the obligated bank refuses to pay after receiving notice of particular circumstances giving rise to the damages."

$250,000 plus interest less registry fee assessment, to Las Vegas Sands, LLC; and

(6)     Defendant Las Vegas Sands may submit a motion and supporting documentation to recover expenses and consequential damages from Bank of Colorado.

Pursuant to this Order, the following claims remain:

(1)     Defendant Las Vegas Sands' Cross-Claim against Defendant Berwick for tortious interference with Las Vegas Sands' rights to the amount of the cashier's check;

(2)     Defendant Berwick's claims against Third Party Defendants Ron Bryant and James Kalhorn; and

(3)     Plaintiff Bank of Colorado's claims against Defendant Berwick for breach of warranty, misrepresentation, and concealment/non-disclosure.

DATED:  March __29__, 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge